GREENSTONE LAW APC
Mark S. Greenstone (SBN 199606)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9156
Facsimile: (310) 201-9160
Email: mgreenstone@greenstonelaw.com

GLANCY PRONGAY & MURRAY LLP
Marc L. Godino (SBN 182689)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: mgodino@glancylaw.com

[Additional Counsel on Signature Page]

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GREG MAY and NATALIE FLIEGELMAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MINT MOBILE, LLC, a Delaware Limited Liability Company, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 8:25-cv-00731-SRM-KES<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Violation of California Penal Code § 632.7<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. Plaintiffs Greg May ("May") and Natalie Fliegelman ("Fliegelman," and collectively with May, "Plaintiffs") bring this class action on behalf of themselves, and all others similarly situated ("Class Members"), against Mint Mobile, LLC ("Mint Mobile" or "Defendant"), and DOES 1 through 10, upon information and belief, except as to their own actions, the investigation of their counsel, and the facts that are a matter of public record, for the unauthorized recording of conversations with Plaintiffs and Class Members on their respective cellular telephones without their knowledge or consent in violation of California Penal Code § 632.7. Plaintiff Fliegelman has voluntarily dismissed the concurrent Fliegelman action pending in the Eastern District of California and is now joined as a Plaintiff in this action pursuant to the Court's Order Granting the Parties' Joint Stipulation to Amend the Complaint. ECF No. 17.

2. This class action arises out of Defendant's policy and practice to record, without the consent of all parties: (1) inbound telephone calls to Defendant's toll-free customer service sales telephone numbers and, on information and belief, (2) Defendant's return and other outbound calls in violation of California's Invasion of Privacy Act, California Penal Code §630, *et seq*. Defendant's toll-free customer service sales numbers may be referred to collectively as "Defendant's customer service sales numbers." Those numbers are limited to 1-800-683-7392 and 1-844-646-8746.

3. During the relevant time period, Defendant intentionally and surreptitiously recorded telephone communications made to and/or from Defendant's customer service sales numbers. Defendant recorded calls without warning or disclosing to inbound callers and, on information and belief, recipients of outbound calls that their calls might be recorded.

4. In 1967, the California Legislature determined that California citizens' privacy rights are essential and enacted the California Invasion of Privacy Act,

California Penal Code § 630 *et seq*. ("CIPA"), to protect those rights. In 1992, the Legislature amended CIPA to add Section 632.7 and bring cellular and cordless telephone conversations within CIPA's protections.

5. Penal Code § 630, *et seq*. plays an important role in protecting the privacy of California residents. As recognized by the California Supreme Court, secret recording "denies the speaker an important aspect of privacy of communication – the right to control the nature and extent of the firsthand dissemination of his statements." *Ribas v. Clark*, 38 Cal. 3d 355, 361 (1985) (citations omitted). The California Supreme Court has declared that California has a "strong and continuing interest in the full and vigorous application" of the provisions that prohibit "the recording of telephone conversations without the knowledge or consent of *all* parties to the conversations." *Kearney v. Salomon Smith Barney, Inc*., 39 Cal. 4th 95, 126 (2006) (italics in original). In *Kearney*, the California Supreme Court explained that if a company wants to record calls as part of its routine business activity, it can avoid liability by giving an appropriate warning at the beginning of each call. "A business that adequately advises all parties to a telephone call, at the outset of the conversation, of its intent to record the call would not violate the provision." *Id* at 118. Furthermore, businesses can take unfair advantage of consumers if they do not disclose that the calls are being recorded, by "selectively disclosing recordings when disclosure serves the company's interest, but not volunteering the recordings' existence (or quickly destroying them) when they would be detrimental to the company. . ." *Id* at 126. The California Supreme Court has declared that Penal Code § 632.7 makes it illegal to record *any* communication involving cellular or cordless telephones without regard to whether the communication is "confidential." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 771, fn. 2 (2002). Moreover, in *Smith v. LoanMe, Inc*., 11 Cal. 5th 183, 202-203 (2021), the California Supreme Court held that Penal Code "section 632.7 prohibits parties as well as nonparties from intentionally recording a

communication transmitted between a cellular or cordless telephone and another device without the consent of all parties to the communication."

6. Under Section 632.7, recording any communication made during a telephone call where one of the parties is on a cellular telephone is prohibited unless all parties to the communication consent. Unlike Penal Code Section 632 (applicable to landlines), there is no requirement of confidentiality under Section 632.7 (applicable to cellular telephones) for the recorded communication to fall within CIPA's protections. Under Section 637.2, a person whose communications are recorded in violation of Section 632.7 may bring a civil action for damages and injunctive relief.

7. As detailed below, Plaintiffs allege that Defendant violated Section 632.7 by routinely and intentionally recording inbound and outbound conversations with consumers on their cellular telephones, without their knowledge or consent.

8. Pursuant to Sections 632.7 and 637.2, Plaintiffs and Class Members are entitled to statutory damages and injunctive relief for Defendant's violations.

## JURISDICTION AND VENUE

9. Defendant has removed this lawsuit to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Defendant alleges that the Court has subject matter jurisdiction under CAFA since this is a class action brought on behalf of a class of at least 100 members; the amount-in-controversy exceeds $5,000,000, exclusive of interest and costs; and Plaintiffs and the members of the class are citizens of California while the Defendant is a citizen of Delaware and Washington.

10. This Court has personal jurisdiction over the Defendant named herein because Defendant does sufficient business in California, has sufficient minimum contacts with California or otherwise intentionally avails itself of the markets within California through its sales, advertising and marketing to render the exercise of

jurisdiction by California courts and the application of California law to the claims of the Plaintiffs permissible under traditional notions of fair play and substantial justice.

11. Venue is proper in this District under 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

12. Plaintiffs are residents of California.

13. Plaintiffs are informed and believe, and based thereon alleges, that Defendant Mint Mobile, LLC ("Mint Mobile") is a Delaware limited liability company with its headquarters in Bellevue, Washington. Mint Mobile is one of the largest mobile virtual network operators ("MVNO") that offers prepaid mobile phone plans in all fifty states, including throughout California. Mint Mobile offers a variety of talk, text and data plans to prospective California consumers with no traditional long-term contracts. Instead, prospective consumers prepay for their chosen plan duration. Prospective consumers can bring their own compatible and unlocked cellular phones to use with Mint Mobile.

14. Plaintiffs are unaware of the true names and capacities of the Doe Defendants sued herein under the fictitious names "DOES 1" through "DOES 10." Plaintiff is informed and believes, and based thereon allege, that Mint Mobile and each Doe Defendant acted as the agent, servant, employee, joint venturer, or alter ego of each other, with the legal authority to act on the others' behalf, and that the acts and omissions of each Defendant was in accordance with, and represent, the official practice and policy of Defendants. Plaintiffs are further informed and believes, and based thereon allege, that each Defendant acted within the scope of such agency, or ratified each and every act or omission alleged herein. In addition, Plaintiffs are informed and believes, and based thereon allege, that each Defendant aided and abetted each and every act or omission alleged herein. Likewise, Plaintiffs are informed and believes, and based thereon allege, that each Defendant is in some

manner intentionally, negligently, or otherwise responsible for each and every act or omission alleged herein. Plaintiffs will seek leave of this Court to amend this Complaint once the names and capacities of DOES 1 through DOES 10 become known.

## ALLEGATIONS CONCERNING DEFENDANT'S UNLAWFUL RECORDING IN VIOLATION OF PENAL CODE § 632.7

15. On December 9, 2024, Plaintiff May, who was not a Mint Mobile customer, called the Mint Mobile customer service number, 1-800-683-7392, from his cellular telephone to compare the cost of wireless service plans. Plaintiff May located the customer service number online at https://www.mintmobile.com/help-center/ and spoke with a Mint Mobile customer service representative. Plaintiff May pressed the following prompts on the Mint Mobile key-activated interactive voice response ("IVR") telephone system: **2** for new prospective customers who do not have an active Mint Mobile number, then **3** to learn more about Mint Mobile or to purchase a plan, and **3** again to speak with a sales human to purchase a new line. Thereafter, Plaintiff May was automatically connected to a live customer service sales representative. Plaintiff May is informed and believes, and thereon alleges, that Mint Mobile recorded Plaintiff May's telephone call. However, Mint Mobile never informed Plaintiff May—during the call or at any time—that his call was being recorded or otherwise provided a recording disclosure.

16. On February 24, 2025 and thereafter on February 26, 2025, while located in her residence in California, Plaintiff Fliegelman, a prospective consumer who was not a Mint Mobile customer, placed telephone calls to Defendant and while using her cellular telephone. On both occasions, Plaintiff Fliegelman called Mint Mobile's customer service telephone number at 1-800-683-7392 and was greeted with a pre-recorded menu from which Plaintiff Fliegelman pressed the following prompts on the Mint Mobile IVR telephone system: **2** for new prospective customers who do not have an active Mint Mobile number, then **3** to learn more about Mint Mobile or

to purchase a plan, and **3** again to speak with a sales human to purchase a new line. Thereafter, Plaintiff Fliegelman was automatically connected each time to a live customer service sales representative. During the call on February 24, 2025, Plaintiff Fliegelman spoke with a live representative of Defendant regarding Mint Mobile prepaid plans, including coverage and network details, device compatibility, plans limitations, as well as data and monthly price plans. Thereafter, on February 26, 2025, Plaintiff Fliegelman called Mint Mobile's customer service sales number at 1-800-683-7392 and spoke with a live customer service sales representative of Defendant requesting additional information regarding Mint Mobile's unlimited data plan, as well as the cancellation process and refund policies.

17. At no point during these inbound telephone communications was Plaintiff Fliegelman ever informed that her communications were being recorded. At no point during the inbound telephone communications did Plaintiff Fliegelman give her consent for the telephone communications to be recorded, and she was entirely unaware that Defendant was engaged in that practice during the telephone communications. On information and belief, these inbound telephone communications were recorded by Defendant, without Plaintiff's knowledge or consent.

18. Plaintiffs' telephone calls to Mint Mobile's customer service number was made while Plaintiffs were in California and using a cellular telephone with a California area code.

19. Plaintiffs are informed and believe, and thereon allege, that at all relevant times, Mint Mobile had and has a practice and policy of recording all incoming and outgoing telephone calls. However, Mint Mobile systematically failed to inform consumers, including Plaintiffs, that it was secretly recording their telephone calls.

20. Plaintiffs did not give, and could not have given consent for the telephone communications to be recorded because they were entirely unaware that Defendant was engaged in that practice during the telephone communications.

21. Because Defendant failed to warn Plaintiffs that the communications were being recorded and their consent for recording of the telephone communications never was sought, Plaintiffs had an objectively reasonable expectation that their telephone communications with Defendant's employees, agents, or representatives were not being recorded. That recording occurred without their consent, is highly offensive to Plaintiffs and would be highly offensive to a reasonable person, including members of the Class proposed herein.

22. Plaintiffs are further informed and believe and thereon allege, that during the Class Period, Defendant intentionally utilized certain computer hardware and/or software technology and/or other equipment ("Call Recording Technology") to execute a company-wide policy and practice of recording inbound and outbound telephone communications with callers, including California callers.

23. Plaintiffs are further informed and believe and thereon allege, that Defendant installed and/or utilized Call Recording Technology on its customer service facing telephone lines. This Call Recording Technology enabled Defendant to record telephone communications with callers, including California callers, and allowed them to store and listen to these recordings.

24. Plaintiffs are further informed and believe and thereon allege, that Defendant's employees, agents, and representatives were and are directed, trained, and instructed to, and did record inbound and outbound telephone communications made to and/or from Mint Mobile's customer service numbers at 1-800-683-7392 and 1-844-646-8746, without obtaining consent.

25. Plaintiffs are further informed and believe and thereon allege, that sometime after February 26, 2025, Defendant modified its key-activated IVR telephone system for Mint Mobile's customer service numbers at 1-800-683-7392 and 1-844-646-8746 to include an appropriate warning or disclosure at the outset of inbound telephone calls informing all callers that their calls may be recorded. Additionally, sometime after February 26, 2025, Defendant modified its key-

activated IVR telephone system for customer service sales numbers at 1-800-683-7392 and 1-844-646-8746 to also include an appropriate warning or disclosure that inbound calls may be recorded after the caller presses **2**, **3** and **3** on the prompts as part of the IVR and before consumers are then automatically connected to a live customer service sales agent.

## CLASS ACTION ALLEGATIONS

26. Plaintiffs seek to represent the following Class under Fed. R. Civ. P. 23:

> All persons who, while located in California had an inbound or outbound telephone conversation with Mint Mobile on a cellular telephone that was recorded without warning or disclosure at the call outset within one year preceding the filing of this action through the date of certification.

27. Excluded from the Class are (1) Defendant, any entity or division in which Defendant has a controlling interest, and Defendant's legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiffs reserve the right to amend the Class definition, and to add subclasses, if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

28. **Numerosity.** Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder would be impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and the Court. The Class Members are readily identifiable from, *inter alia*, information and records in Defendants' possession, custody, or control. This information may then be used to contact potential Class Members.

29. **Typicality.** Plaintiffs' claims are typical of the claims of the Class in that they, like all Class Members, spoke with Defendant on their cellular telephones and their calls were recorded without their knowledge or consent. Thus, Plaintiffs,

like the Class, are entitled to statutory damages of $5,000 under California Penal Code Sections 637.2(a)(1) for each violation of California Penal Code Section 632.7. Further, the factual bases of Defendant's misconduct are common to all Class Members and resulted in injury to all Class Members.

30. **Commonality.** There are numerous questions of law and fact common to Plaintiffs and the Class that predominate over any question affecting only individual Class Members. These common legal and factual questions include the following:

a) Whether Defendant had a policy of recording inbound and/or outbound telephone calls made to and/or from Mint Mobile's customer service sales numbers at 1-800-683-7392 and 1-844-646-8746 during the class period;

b) Whether Defendant had a policy of not disclosing that inbound and/or outbound calls were being recorded during the class period; and

c) Whether Defendant's failure to disclose that inbound and/or outbound calls were being recorded during the class period violated Section 632.7 of CIPA.

31. **Adequate Representation.** Plaintiffs will fairly and adequately protect the interests of Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer privacy class actions, and intend to prosecute this action vigorously.

32. **Predominance and Superiority.** Plaintiffs and the Class Members have all suffered irreparable harm as a result of Defendant's unlawful and wrongful conduct. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of each individual Class Member's claim, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment

of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation because class treatment will conserve the resources of the Court and the litigants and will promote consistency and efficiency of adjudication.

## CAUSE OF ACTION

(Invasion of Privacy: Violation of Cal. Penal Code § 632.7)

33. Plaintiffs re-plead, re-allege, and incorporate by reference each and every allegation set forth above.

34. Penal Code section 632.7, in pertinent part, states that "[e]very person who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones [or] a cellular radio telephone and a landline telephone . . . shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in a county jail not exceeding one year." Cal. Penal Code § 632.7(a). Thus, on its face, Section 632.7 precludes the recording of any communications involving a cellular telephone without the consent of all parties to the communication.

35. Plaintiffs are informed and believe, and thereupon allege, that Defendant knowingly violated Section 632.7 by intentionally recording inbound and/or outbound calls with Plaintiff and Class Members using cellular telephones without obtaining consent for recordation. There is no requirement under Section 632.7 that the communication be confidential.

36. Because Defendant did not disclose to Plaintiff or Class Members who called one of Defendant's customer service sales numbers at 1-800-683-7392 and 1-844-646-8746, or who received a call from one of those numbers, at the call outset, that their calls were being recorded, Defendant did not obtain, and could not have obtained, Plaintiff or Class Members consent to the recording of those conversations. Indeed, Plaintiff and the Class had an objectively reasonable expectation that their

calls were not being recorded. That expectation and its objective reasonableness arises, in part, and is supported by the fact that: (1) Defendant is required by law to inform persons it receives calls from, or makes calls to, at the outset of the communication, of its intent to record the calls; (2) Businesses that record telephone calls customarily do so inform the persons they receive calls from or make calls to, at the outset of the communication; and (3) Defendant did not inform Plaintiffs and Class Members, at the outset of the communications, that their telephone communications were being recorded, nor did Defendant seek to obtain their consent to record. In the business-call context, the California Supreme Court has stated, "in light of the circumstances that California consumers are accustomed to being informed at the outset of a telephone call whenever a business entity intends to record the call, it appears equally plausible that, in the absence of such an advisement, a California consumer reasonably would anticipate that such a telephone call is *not* being recorded, particularly in view of the strong privacy interest most persons have with regard to the personal financial information frequently disclosed in such calls." *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 118 (2006).

37. Penal Code Section 637.2 states that all persons whose respective communications have been recorded in violation of Section 637.2 "may bring an action against the person who committed the violation for . . . [f]ive thousand dollars ($5,000) per violation," as well as "an action to enjoin and restrain any [such] violation." Based on the foregoing, Plaintiffs and Class Members are entitled to, and below herein do pray for, their statutory remedies and damages, including, but not limited to, those set forth in section 637.2.

38. Since this case is brought for the purpose of enforcing important rights affecting the public interest, Plaintiffs and the Class seek recovery of their attorneys' fees pursuant to the private attorney general doctrine codified in Code of Civil Procedure section 1021.5, or any other applicable statutes.

///

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

1. An order certifying the Class under Fed. R. Civ. P. 23;

2. $5,000 per violation of section 637.2 for Plaintiffs and each member of the Class;

3. Injunctive relief in the form of an order preliminarily and permanently enjoining Defendant from recording telephone conversations with California residents, including Plaintiffs and the Class, without their prior consent;

4. An award of attorneys' fees and costs, as allowed by law, including, but not limited to, pursuant to California Code of Civil Procedure Section 1021.5, and as authorized under the “common fund” doctrine, and as authorized by the “substantial benefit” doctrine;

5. An award of pre-judgment and post-judgment interest, as provided by law;

6. Leave to amend the Complaint to conform to the evidence produced at trial; and

7. Such other relief as may be appropriate under the circumstances.

///

///

///

///

///

///

///

///

///

///

///

**PLAINTIFFS HEREBY REQUEST A TRIAL BY JURY**

Plaintiffs hereby demand a trial by jury for Plaintiffs and the Class as to all issues so triable.

Dated: July 10, 2025

GREENSTONE LAW APC

By: */s/ Mark S. Greenstone*
Mark S. Greenstone (SBN 199606)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Tel: (310) 201-9156
Fax: (310) 201-9160
Email: mgreenstone@greenstonelaw.com

GLANCY PRONGAY & MURRAY LLP
Marc L. Godino (SBN 182689)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: mgodino@glancylaw.com

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
Todd M. Friedman (SBN 216752)
tfriedman@toddflaw.com
Adrian R. Bacon (280332)
abacon@toddflaw.com
21031 Ventura Boulevard, Suite 340
Woodland Hills, CA 91364
Telephone: (323) 306-4234

LAW OFFICES OF ZEV B. ZYSMAN
A Professional Corporation
Zev B. Zysman (SBN 176805)
zev@zysmanlawca.com
15760 Ventura Boulevard, Suite 700
Encino, CA 91436
Telephone: (818) 783-8836

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Mark S. Greenstone, hereby certify that on July 10, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

*/s/ Mark S. Greenstone*
Mark S. Greenstone